[Cite as *State v. Fant*, 2016-Ohio-7429.]

STATE OF OHIO, MAHONING COUNTY
IN THE COURT OF APPEALS
SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | CASE NO. 14 MA 0067 |
| VS. | ) | |
| | ) | OPINION |
| KEITH FANT | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from Court of Common
                               Pleas, Mahoning County, Ohio
                               Case No. 13 CR 1195

JUDGMENT:                      Affirmed.

APPEARANCES:
For Plaintiff-Appellee         Attorney Paul Gains
                               Mahoning County Prosecutor
                               Attorney Ralph Rivera
                               Assistant Prosecutor
                               21 W. Boardman Street, 6th Floor
                               Youngstown, Ohio 44503

For Defendant-Appellant        Attorney Aaron Baker
                               38109 Euclid Avenue
                               Willoughby, Ohio 44094

JUDGES:

Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: October 18, 2016

DeGENARO, J.

{¶1} Defendant-Appellant, Keith Fant, appeals the judgment convicting him of felonious assault along with two firearm specifications and imposing consecutive sentences. Fant asserts multiple errors that are meritless; accordingly the judgment of the trial court is affirmed.

**Facts and Procedural History**

{¶2} In late October, Joseph Little arrived at his mother's home claiming to have been shot at by Fant while Joseph was driving a rental vehicle. Three days after the shooting an arrest warrant was issued for Fant, and in late November Fant was indicted for felonious assault, a second-degree felony, and two firearm specifications. Trial was originally set for the following January, but when Fant filed a motion to discharge based on a speedy trial violation, his case was reset until mid-May. On that date the speedy trial motion was denied, and a jury trial commenced the same day, just over six months after the shooting. During voir dire, Fant used all of his peremptory challenges.

{¶3} After the jury was empaneled, opening statements made, and the State's first witness called, the parties convened in chambers and on the record. Fant's counsel waived his presence. One of the jurors revealed that he was related to the alleged victim; he was excused for cause. Another juror revealed that he was a social friend of a county assistant prosecuting attorney. Three days later, the trial court declared a mistrial.

{¶4} Fant's second jury trial commenced less than a week later and his counsel moved to dismiss, contending this second trial violated double jeopardy. The trial court denied the motion, and the trial proceeded.

{¶5} During voir dire the State exercised a peremptory challenge against the sole African-American juror in the jury venire of approximately 38 people. Fant's counsel raised a Batson challenge, which was denied.

{¶6} The trial proceeded and the following facts were adduced. On October 28, 2013, Joseph Little, his mother, his cousin and a family friend gathered on the front porch of his mother's house on Aberdeen Avenue. Both Joseph and his cousin

observed Jonathan Hilson driving slowly down Aberdeen in a champagne-colored Buick. Joseph testified that he had known Hilson for two years, and that a few days prior to the shooting, Fant and Hilson came to Joseph's mother's house with a gun because they "had a problem."

{¶7} Joseph left to run an errand and observed Hilson driving and Fant in the passenger's seat in the same champagne-colored car sitting at a stop sign at a nearby intersection. Eventually, Joseph wound up traveling behind Hilson and Fant. As the cars turned onto Shirley Road Hilson and Fant were still in front of Joseph. Joseph stated that Fant "waved a gun" which appeared to be a .38 revolver, and held it behind his head so that Joseph could see it through the rear window.

{¶8} The cars turned onto Ivanhoe Avenue at which point Fant came out of the passenger side window and "let shots off." Joseph further testified that the shots were aimed at him, that he ducked down and threw the car turned into reverse. Joseph called his mother and told her what happened and returned to her house. Police were already there when he arrived, and he told the officers that Fant had shot at him. Meta testified that she heard gunshots shortly before Joseph returned, and when he did, he was "shaken and upset."

{¶9} Youngstown Police Detective-Sergeant David Sweeney investigated the shooting, and testified that he took statements from Joseph and Asya Hosey, who talked to Fant on the phone the day of the shooting. As a result, Fant and Hilson became suspects. Sweeney put together a photo lineup and Joseph identified Fant and Hilson from the photographic arrays. Sweeney also verified through several 911 calls that gun shots were heard in the area that afternoon. Sweeney testified that no physical evidence was collected. Joseph stated that the gun used appeared to be a revolver—which does not expel a shell casing. No tests were done for gunshot residue due to the amount of time that had elapsed from the date of the incident to the date of arrest.

{¶10} Hosey testified that she was in an "on again, off again" relationship with Fant, but that her relationship with him was "off" at the time of the shooting. She

stated that Fant called her two times on the day of the shooting. In the first call Fant asked her who was driving the blue Ford Taurus, which was the rental vehicle Joseph was using. In the second call Fant admitted to Hosey that he shot at Joseph. Hosey recognized Fant's voice, knew his phone number and the call came from his phone.

{¶11} Youngstown Officer Greg Mullennex testified that he was assigned to the United State Marshal's Task Force that is responsible for serving violent felony arrest warrants. Three days after the shooting, Mullennex assisted in serving an arrest warrant for Fant at a residence on Ridge Avenue. Upon arriving, officers knocked on the door and made contact with Fant's mother. Fant was found in the basement wedged between the wall and the furnace.

{¶12} The jury convicted Fant of all three charges. The trial court sentenced Fant to four years for felonious assault; three years for the firearm specification, using a firearm to facilitate the offense; and five years for the firearm specification, discharging a firearm from a motor vehicle, to be served consecutively by law, for a total 12-year prison term.

### Sufficiency and Manifest Weight

{¶13} In his first and second of eight assignments of error Fant asserts:

The trial court erred by failing to grant a judgment of acquittal pursuant to Crim.R. 29(A), and thereafter entering a judgment of conviction of that offense which was not supported by sufficient evidence, in derogation of Appellant's right to due process of law, as protected by the Fourteenth Amendment to the United States Constitution.

The trial court erred by entering a judgment of conviction that was against the manifest weight of the evidence, in derogation of Appellant's right to due process of law, as protected by the Fourteenth Amendment to the United States Constitution.

**{¶14}** Fant made a Crim.R. 29 motion for acquittal at the close of the State's case asserting there was insufficient evidence to support a conviction for felonious assault and the attendant firearm specifications. A Crim.R. 29(A) motion tests the sufficiency of the evidence. *State v. Campbell*, 11th Dist. No.2013–A–0047, 2014–Ohio–972, ¶ 22. "Pursuant to Crim.R. 29, a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Ivey*, 8th Dist. No. 80812, 2003–Ohio–1825, ¶ 13.

**{¶15}** "A challenge to the sufficiency of the evidence tests whether the state has properly discharged its burden to produce competent, probative, evidence on each element of the offense charged." *State v. Petefish*, 7th Dist. No. 10 MA 78, 2011–Ohio–6367, ¶ 16. Thus, sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997–Ohio–52, 678 N.E.2d 541. "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Id.* "In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Smith*, 80 Ohio St.3d 89, 113, 1997–Ohio–355, 684 N.E.2d 668 (internal citations omitted).

**{¶16}** "Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541. A conviction will only be reversed as against the manifest weight of the evidence in exceptional circumstances. *Id.* This is so because the triers of fact are in a better position to determine credibility issues, since they personally viewed the demeanor, voice inflections and gestures of the witnesses. *State v. Hill*, 75 Ohio St.3d 195, 208, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

**{¶17}** Thus, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts

in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387. However, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99 CA 149, 2002–Ohio–1152, *2, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999).

**{¶18}** Fant alternatively contends his convictions are supported by insufficient evidence and against the manifest weight of the evidence. Felonious assault is defined as knowingly attempting or causing physical harm with a deadly weapon. R.C. 2903.11(A)(2). A person acts knowingly when, regardless of purpose, is "aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Fant was also convicted of two firearm specifications: using a firearm while committing the offense under R.C. 2941.145 and discharging a firearm from a motor vehicle pursuant to R.C. 2941.146.

**{¶19}** Joseph testified that Fant shot at him while Fant was a passenger in a car driven by Hilson. Hosey testified that Fant called her and confessed to shooting at Joseph. Several 911 calls that date reported gunshots were heard near the location of the shooting. Three days later while serving an arrest warrant for Fant, officers found him hiding in a basement.

**{¶20}** From this uncontroverted evidence Fant knowingly attempted to cause physical harm to Joseph by shooting at him. Fant takes issue with the fact that no gun was recovered, nor that any shell casings were found. We have rejected this argument before, concluding that recovery of the firearm was not necessary since other parties testified that they saw the defendant point a gun at them. *State v. Hill*, 7th Dist. No. 09–MA–202, 2011–Ohio–6217, ¶ 54. Here, Joseph testified that he saw Fant shoot at him. This was bolstered by the testimony of Hosey and the 911 reports of shots fired in the area.

**{¶21}** The State also proved the elements necessary to convict Fant of

discharging a firearm from a motor vehicle and using a firearm to commit the offense of felonious assault. Firearm is defined in R.C. 2923.11(B) as any deadly weapon capable of propelling or expelling a projectile.

> In interpreting R.C. 2923.11(B), the Supreme Court has expressly held that the state's burden as to operability can be met through circumstantial evidence: "Admission into evidence of the firearm allegedly employed in the crime is not necessary to establish the specification. Rather, the fact may be established by circumstantial evidence (testimony as to gunshots, smell of gunpowder, bullets or bullet holes, etc.). Nevertheless, there must be some evidence relative to the gun's operability."

*State v. Bailey*, 90 Ohio App.3d 58, 79, 627 N.E.2d 1078 (11th Dist.1992), quoting *State v. Gaines*, 46 Ohio St.3d 65, 70, 545 N.E.2d 68 (1989).

**{¶22}** The State presented sufficient evidence to establish each element of the firearm specifications through the testimony of Joseph, Hosey and Officer Sweeney. Accordingly, the trial court properly denied Fant's Crim.R. 29(A) motion for acquittal, and his first assignment of error is meritless.

**{¶23}** Turning to Fant's manifest weight argument, he contends that if we deem the evidence to be legally sufficient, then this second standard of review mandates reversal, without further explanation or argument. It is Fant's duty to construct the legal arguments necessary to support his assigned errors. *City of Whitehall v. Ruckman*, 10th Dist. No. 07AP–445, 2007–Ohio–6780, ¶ 20.

**{¶24}** Regardless, Fant's conviction is not against the manifest weight of the evidence. Joseph testified that Fant shot at him while Fant was a passenger in a car driven by Hilson. Hosey testified that Fant called her and confessed to shooting at Joseph. Several 911 calls that date reported gunshots were heard near the location of the shooting. This evidence was uncontroverted by Fant. The jury did not lose its

way; there was substantial evidence supporting the guilty verdicts for felonious assault and both firearm specifications. Accordingly, Fant's second assignment of error is meritless.

## Batson challenge

{¶25} In his third of eight assignments of error, Fant asserts:

Appellant was denied equal protection of law pursuant to the fourteenth amendment to the United States Constitution due to purposeful racial discrimination by the State in jury selection and failure of the trial court to follow applicable law.

{¶26} The Equal Protection Clause of the United States Constitution prohibits purposeful discrimination in the exercise of a peremptory challenge to excuse a juror on account of his race. *Batson v. Kentucky,* 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In *Batson,* the United States Supreme Court outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause. *Id.* at 96–98. First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. *Id.* at 96–97. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. *Id.* at 97–98. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. *Id.* at 98. An appellate court will not reverse the trial court's decision of no discrimination unless it is clearly erroneous. *See State v. Hernandez,* 63 Ohio St.3d 577, 583, 589 N.E.2d 1310 (1992).

{¶27} Fant contends that the sole African-American prospective juror of an approximate 38 person venire, was excused by the State using a peremptory challenge in a racially discriminatory manner. The initial phase of voir dire involved counsel posing general questions to all prospective jurors; some volunteered answers as appropriate to these general questions. Thereafter, the prosecutor asked

specific questions to prospective jurors relative to responses on their juror questionnaires. Pertinent to this appeal is the following exchange during this portion of voir dire:

> PROSECUTOR: What the Judge will tell all of you is that evidence is both testimonial and physical, meaning I could introduce a tire iron which would be a physical piece of evidence. Also what the witness is testifying on the stand is also evidence as well. Will anyone here have a problem if the state chooses not to present any physical evidence, any forensic evidence? Would anybody if they heard the testimony and they believe everyone who is testifying, would anyone say I believe the witnesses, but there's no DNA so I can't vote guilty? Does anyone feel that way?

> This case is going to deal with another legal theory, and it's called complicity. Ms. Bowman, you're staring over there. Is there something interesting over there?

> PROS. JUROR: No, I was just looking that way.

> PROSECUTOR: Do you know what complicity means?

> PROS. JUROR: Not really.

> PROSECUTOR: Honestly I didn't know about it until actually probably midway through my second year of law school. Complicity is a theory that says you can be guilty of a crime even if you're not the main perpetrator if you help them commit the crime. Do you understand that?

> PROS. JUROR: Yes.

> PROSECUTOR: So if you and I decided that we were going to rob a bank, and I was the getaway driver -- actually you're probably a better

driver than I am, so you're the getaway driver, and I go in and I rob a bank, you can be just as guilty of robbing the bank as I can under law. Do you understand that?

PROS. JUROR: (Nodding head).

PROSECUTOR: Does everyone understand that? Ms. Bowman, are you going to have a problem finding someone who is just the getaway driver guilty even though the other person may have done, quote, unquote, the crime? Is that going to be difficult for you?

PROS. JUROR: I really don't know.

PROSECUTOR: Huh?

PROS. JUROR: I really don't know.

PROSECUTOR: I'm going to have to ask you some more questions. When you say you really don't know, are there facts that might come into play, evidence that might come into play, that would enable you to vote guilty or not guilty, or is that just a moral position?

PROS. JUROR: Just a moral. Just a moral. I don't know.

PROSECUTOR: So you will not be able to be -- you will not be able to follow the instructions of law given to you by the Judge if the Judge says that you can convict someone for being complicit of a crime? You wouldn't be able to listen to the Judge if he told you that?

PROS. JUROR: Yes, I would.

PROSECUTOR: Okay, you would be able to listen?

PROS. JUROR: Yes, I would.

**{¶28}** Both sides declined to strike any jurors for cause; and the State used its first peremptory challenge to strike the lone African-American venireman. The State concedes that Fant satisfied the first step of demonstrating a prima facie case of racial discrimination. Consequently, the burden shifts to the State to articulate a race-neutral explanation for striking the juror in question. The State's response to the *Batson* challenge was as follows:

> Thank you, Your Honor. Prior to my questioning Ms. Bowman, she was staring at the floor. She wasn't paying attention to what I had to say. On further inquiry when it came to the concept of complicity and the culpability of a codefendant, she seemed remiss in being able to grasp the theory that someone could be guilty of a crime even if they were not the prime actor. Based upon her lack of paying attention during the voir dire of other jury members, as well as her response to that specific question when it came to complicity, I felt that she was an inappropriate juror for this, and no way did I take into account her city of residence or her race.

**{¶29}** The defense argued at trial, and now on appeal, that Ms. Bowman ultimately indicated that she would be able to listen to the judge and follow his instructions of law. However, the trial court ultimately overruled the challenge:

> Thank you. I am going to find that the explanation offered is facially race neutral and that the opponent of the peremptory challenge has not proven purposeful racial discrimination. The objection and motion is noted but overruled.

**{¶30}** The State gave two racially-neutral reasons for using a peremptory challenge to strike this juror: not paying attention and her "moral" difficulty in convicting a person under the theory of complicity. The narrow standard of review imposed upon intermediate appellate courts in *Batson* is premised upon the principle

that the assessment of the genuineness of a racially-neutral reason necessitates a multi-dimensional analysis by the trial court which is severely limited when an appellate court reviews the one-dimensional transcript of voir dire. Resolution of a *Batson* challenge is dependent upon credibility determinations the trial court must make of the prosecutor and the prosecutor's articulated assessment of the prospective juror's behavior during voir dire, which the trial court also has the benefit of observing. Thus, an appellate court's consideration of a *Batson* challenge by necessity dictates review for clearly erroneous determinations that are not dependent upon credibility determinations.

{¶31} The United States Supreme Court recently reiterated the narrow standard of review contemplated by 'clearly erroneous'—the third step in the *Batson* analysis. "That step turns on factual determinations, and, 'in the absence of exceptional circumstances,' we defer to state court factual findings unless we conclude that they are clearly erroneous." *Foster v. Chatman*, – U.S. –, 136 S.Ct. 1737, 1748, 195 L.Ed.2d 1 (2016).

{¶32} As the trial court's finding that no purposeful discrimination occurred by striking the prospective juror was not clearly erroneous, Fant's third assignment of error is meritless.

## Speedy Trial

{¶33} In his fourth of eight assignments of error, Fant asserts:

> The trial court acted contrary to law by denying Appellant's
> Motion to Discharge for lack of a speedy trial, as the time permitted for
> Appellant to be brought to trial had expired.

{¶34} The Sixth Amendment to the United States Constitution provides that an "accused shall enjoy the right to a speedy and public trial." Section 10, Article I of the Ohio Constitution also provides a criminal defendant the right to a speedy public trial by an impartial jury. Ohio affords statutory protections as well. "Upon motion made at or prior to the commencement of trial, a person charged with an offense

shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code." R.C. 2945.73(B). A defendant charged with a felony must be brought to trial within 270 days of his or her arrest. R.C. 2945.71(C)(2). However, pursuant to the triple count provision, "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E).

{¶35} A review of a trial court's decision regarding a motion to dismiss based on statutory speedy trial grounds involves a mixed question of law and fact. *State v. McCall*, 152 Ohio App.3d 377, 2003–Ohio–1603, 787 N.E.2d 1241, ¶ 9 (7th Dist.). Deference is given to findings of fact, but the appellate court independently reviews whether the trial court properly applied the law to the facts of the case. *Id.* When reviewing the legal issues regarding a statutory speedy trial case, the statutes are strictly construed against the state. *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 1996–Ohio–171, 661 N.E.2d 706.

{¶36} Fant and the State agree that 34 days ran from the date of arrest until December 4th, when Fant filed discovery requests. The arrest date does not count against the state for purposes of speedy trial time calculations. *State v. Miller*, 7th Dist. No. 07 MA 215, 2008–Ohio–3085, ¶ 23, citing *State v. Stamps*, 127 Ohio App.3d 219, 223, 712 N.E.2d 762 (10th.Dist.1998)

{¶37} Fant contends that one additional day ran from December 9th to the 10th; however, on that date Fant requested a transcript from the preliminary hearing. Thus, the time was tolled until the preliminary hearing transcript was filed on January 6. *Miller*, supra, ¶ 24. Therefore, the speedy trial clock stood at 34 days.

{¶38} By joint agreement the trial was continued from January 6th to the 22nd. However, the trial was continued again to January 27th due to courtroom availability, which Fant argues restarts the speedy trial clock. However, "reasonable trial delays due to scheduling conflicts, crowded dockets, or the lack of an available courtroom, toll the speedy trial clock." *State v. Nottingham*, 7th Dist. No. 05 BE 39, 2007–Ohio–3040, ¶ 18 (internal citations omitted). As such, only 34 days still had

elapsed.

**{¶39}** On January 27th the State offered a Rule 11 agreement which was rejected by Fant; the trial court set the matter for pretrial on February 18th and trial for March 3rd. There is no indication as to who made the request or if Fant was in agreement with the date. The State argues the entire time is tolled and Fant disagrees. However, the judgment entry from the February 18th pretrial states "[u]pon agreement of the parties, this matter shall remain as set for Jury Trial on March 3."

**{¶40}** On March 3rd Fant filed a second discovery request, which the trial court granted the next day, stating: "Defendant and counsel explicitly acknowledge that this request is a tolling event for purposes of calculating speedy trial." Also on March 3rd the trial court continued the trial until May 19th due to the courtroom being unavailable because of another criminal trial. Fant argues that this time should count towards his speedy trial time calculation because he did not consent. However, we have previously held that the speedy time clock is tolled when a trial court continues a matter due to involvement in another criminal trial. *State v. McCall*, 152 Ohio App.3d 377, 2003–Ohio–1603 , 787 N.E.2d 1241, ¶ 23 (7th Dist.). Additionally, his consent is not necessary when the trial court's continuance is due to the courtroom availability. *Nottingham, supra.* Thus, the elapsed speedy trial time still stands at 34 days.

**{¶41}** On May 19th the first jury trial commenced which resulted in a mistrial. The second trial started on May 27th, which added eight days to the calculation. Thus, 42 days had elapsed on Fant's speedy trial time, well under the 90 days set by statute. Accordingly, Fant's fourth assignment of error is meritless.

### Right to Be Present

**{¶42}** In his fifth of eight assignments of error, Fant asserts:

> The trial court violated Appellant's fundamental constitutional right to be present during a critical portion of his trial, without affirmative waiver on the record, at the time that a mistrial was granted.

{¶43} "An accused has a fundamental right to be present at all critical stages of his criminal trial." *State v. Hale*, 119 Ohio St.3d 118, 2008–Ohio–3426, 892 N.E.2d 864, ¶ 100; Section 10, Article I, Ohio Constitution; Crim.R. 43(A). "[T]the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Id.* (internal citations omitted) However, counsel can waive the defendant's right to be present. *State v. Green*, 90 Ohio St.3d 352, 372, 2000–Ohio–182, 738 N.E.2d 1208.

{¶44} The record demonstrates that Fant's trial counsel waived his presence. Accordingly, Fant's fifth assignment of error is meritless.

### Double Jeopardy

{¶45} In his sixth of eight assignments of error, Fant asserts:

As a result of Appellant's lack of presence at the hearing during which a mistrial was declared, his subsequent trial was a violation of his right against double jeopardy.

{¶46} It is well-settled that "[t]he Double Jeopardy Clause of the United States Constitution prohibits (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *State v. Brown*, 119 Ohio St.3d 447, 2008–Ohio–4569 , 895 N.E.2d 149, ¶ 10, citing *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). "These double-jeopardy protections apply to the states through the Fourteenth Amendment." *Id.*, citing *Benton v. Maryland*, 395 U.S. 784, 786, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969). In addition, Section 10, Article I of the Ohio Constitution provides that "[n]o person shall be twice put in jeopardy for the same offense."

{¶47} Generally, there are no double jeopardy considerations when a mistrial is declared. *State v. Gaines,* 8th Dist. No. 82301, 2003–Ohio–6855, ¶ 45. "When a trial court grants a criminal defendant's request for a mistrial, the Double Jeopardy Clause does not bar retrial." *State v. Loza,* 71 Ohio St.3d 61, 70, 641 N.E.2d 1082,

citing *Oregon v. Kennedy*, 456 U.S. 667, 673, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). The Court noted a narrow exception in cases where the mistrial is precipitated by prosecutorial misconduct intentionally calculated to cause or invite mistrial. *Loza,* citing *Kennedy* at 678-688. This Court reviews the denial of a motion to dismiss on double jeopardy grounds de novo. *State v. Kelly*, 2015–Ohio–1948, 34 N.E.3d 513, ¶ 14 (8th Dist.).

**{¶48}** Fant does not deny that he requested the mistrial. But he fails to argue that the State engaged in misconduct intentionally calculated to result in a mistrial; instead focusing on the fact that the hearing was conducted outside of his presence. As discussed, counsel waived his presence. Accordingly, Fant's sixth assignment regarding double jeopardy is meritless.

## Jury Instructions

**{¶49}** In his seventh of eight assignments of error, Fant asserts:

> The trial court erred in failing to instruct the jury as to the inferior degree offense of Aggravated Menacing.

**{¶50}** It is within the sound discretion of a trial court to refuse to admit proposed jury instructions which are either redundant or immaterial to the case. *Bostic v. Connor*, 37 Ohio St.3d 144, 524 N.E.2d 881(1988), syllabus. A jury instruction must be given on a lesser included or inferior-degree offense when sufficient evidence is presented which would allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included offense. *State v. Shane*, 63 Ohio St.3d 630, 632–633, 590 N.E.2d 272 (1992).

**{¶51}** The parties agree that aggravated menacing is not a lesser-included offense of felonious assault, but it is an inferior degree offense. Felonious assault is defined as knowingly attempting or causing physical harm by means of a deadly weapon. R.C. 2903.11(A)(2). Aggravated menacing is defined as knowingly causing another to believe that the offender will cause serious physical harm to the other or their property. R.C. 2903.21. "In felonious assault, the actor intends to injure the

victim, whereas in aggravated menacing, the actor's intent is to scare or threaten the victim. This distinction is merely an additional mitigating element." *State v. Lodico*, 5th Dist. No. 2005CA00318, 2006–Ohio–5714, ¶ 33.

**{¶52}** A jury instruction on the inferior offense of aggravated menacing was not required here because the evidence did not support giving that instruction. Joseph testified that as Hilson drove the vehicle around the corner, Fant leaned out of the vehicle so far that his head and arms were outside the window, aimed at him and his car, and fired the weapon. It would be impossible to instruct a jury on the inferior offense of aggravated menacing in light of the evidence. Accordingly, Fant's seventh assignment of error is meritless.

### Mandatory Consecutive Sentences

**{¶53}** In his final assignment of error, Fant asserts:

> The trial court erred in imposing consecutive sentences for the convictions of R.C. §2941.145 and R.C. §2941.146 in violation of R.C. §2941.25.

**{¶54}** Our review of Fant's challenge to his sentence is limited to determining whether his sentence is clear and convincing contrary to law as measured against the evidence in the record. R.C. 2953.08(G)(2); *State v. Marcum*, 2016–Ohio–1002, – N.E.3d –, ¶ 7.

**{¶55}** Fant challenges the trial court's imposition of consecutive sentences for the two firearm specifications—using a firearm while committing the offense and discharging a firearm from a motor vehicle—via R.C. 2941.25, Ohio's merger statute, rather than the sentencing regime required by R.C. 2929.14 when a trial court seeks to impose nonmandatory consecutive sentences.

**{¶56}** "[T]here are certain circumstances that require the imposition of consecutive sentences. *See, e.g.,* R.C. 2929.14(C)(1)(a), which requires that any mandatory prison term for having a firearm in the commission of a felony shall be served consecutively to any mandatory sentence imposed for the underlying felony.

Otherwise, trial judges have discretion to order that multiple sentences to be served consecutively pursuant to R.C. 2929.14(C)(4)," *State v, Sergent*, 2016–Ohio–2696, – N.E.3d – , ¶ 16. Thus, the R.C. 2929.14 findings need not be made under these circumstances. *State v. Freeman*, 7th Dist. No. 14MA25, 2014–Ohio–5725, ¶ 31.

**{¶57}** The relevant portions of these two statutes provide:

> [I]f a mandatory prison term is imposed upon an offender * * * for having a firearm on or about the offender's person or under the offender's control while committing a felony, if a mandatory prison term is imposed upon an offender * * * [for] discharging a firearm from a motor vehicle, or if both types of mandatory prison terms are imposed, the offender shall serve any mandatory prison term imposed under either division consecutively to any other mandatory prison term imposed under either division * * * consecutively to and prior to any prison term imposed for the underlying felony[.]

R.C. 2929.14(C)(1)(a).

> Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25(B)

**{¶58}** Construing these two statutes together, Fant's two separate convictions for using a firearm to facilitate the offense and for discharging a firearm from a motor vehicle are not offenses of similar import and thus do not merge; moreover, the sentences for each are statutorily mandated to be served consecutively to each other and Fant's underlying felonious assault conviction. The trial court had no discretion relative to the imposition of consecutive sentences. We reach this holding based

upon the Ohio Supreme Court's resolution of a merger challenge to consecutive sentences imposed for the discharge of a firearm at or into a habitation and using a firearm to facilitate the offense.

> * * * [T]he statutes do not state that a defendant shall not use a firearm during the commission of a crime: they state that when a firearm is used, an additional penalty will be imposed. Thus, the firearm specification is merely a sentencing provision that requires an enhanced penalty upon certain findings. We hold that R.C. 2941.145 and 2929.14(D) define a sentence enhancement that attaches to a predicate offense.
>
> * * *
>
> Moreover, the placement of R.C. 2941.145 and 2929.14 within the Revised Code confirms that the firearm specification is merely a sentence enhancement, not a separate criminal offense. Typically, criminal offenses are grouped within a discrete chapter of the Revised Code.
>
> * * *
>
> In contrast, R.C. 2941.145 appears in R.C. Chapter 2941, which addresses the indictment, and R.C. 2929.14(B) appears in R.C. Chapter 2929, which addresses penalties and sentencing. Generally, provisions within R.C. Chapter 2941 address the content that is required in an indictment, and provisions within R.C. Chapter 2929 address sentencing. Notably, no provisions within either chapter appear to define a criminal offense.
>
> * * * the criminal offense of discharging a firearm at or into a habitation under R.C. 2923.161 and a firearm specification as defined in R.C. 2941.145 are not allied offenses of similar import as defined in R.C. 2941.25, because a firearm specification is a penalty enhancement, not a criminal offense. Penalties for a specification and

its predicate offense do not merge under R.C. 2941.25. Consequently, the sentences for discharging a firearm at or into a habitation and for the firearm specification are not merged.

*State v. Ford*, 128 Ohio St.3d 398, 2011–Ohio–765, 945 N.E.2d 498, ¶ 16-19.

**{¶59}** The General Assembly has articulated the policy determination in R.C. 2929.14 that the firearm specifications in R.C. 2914.145 and R.C. 2929.146 shall have mandatory sentences and shall be served consecutively to each other and the underlying offense. Under R.C. 2929.14, trial court's do not have any discretion regarding consecutive sentences for these firearm specifications; they are statutorily mandated to impose consecutive sentences for the underlying offenses and these specifications.

**{¶60}** In sum, all of Fant's assignments of error are meritless, and the judgment of the trial court is affirmed.

Waite, J., concurs.

Robb, J., concurs.