[Cite as *State v. Wright*, 2017-Ohio-1211.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) | |
|     PLAINTIFF-APPELLEE | ) | |
| | ) | CASE NO. 15 MA 0092 |
| VS. | ) | |
| | ) | OPINION |
| KEVIN WRIGHT | ) | |
| | ) | |
|     DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:    Criminal Appeal from the Court of Common Pleas of Mahoning County, Ohio
Case No. 2013 CR 147

JUDGMENT:    Affirm conviction. Reverse and Remand in part.

APPEARANCES:
For Plaintiff-Appellee    Attorney Paul Gains
Mahoning County Prosecutor
Attorney Ralph Rivera
Assistant Prosecutor
21 West Boardman Street, 6th Floor
Youngstown, Ohio 44503-1426

For Defendant-Appellant    Attorney Ryan Ingram
7330 Market Street
Youngstown, Ohio 44512

JUDGES:

Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Carol Ann Robb

Dated: March 29, 2017

DeGENARO, J.

{¶1} Defendant-Appellant, Kevin Wright, appeals the trial court's judgment contending that there was a speedy trial violation, asserting a *Batson* challenge and arguing a sentencing error. We hold that his arguments are meritless and hereby affirm his conviction and 19 year sentence. However, while the trial court did sentence Wright to three years on the merged gun specifications at the sentencing hearing, the sentencing entry omits this order. Accordingly this matter is remanded to the trial court with instructions to issue a nunc pro tunc order to specify in the sentencing entry that a component of Wright's sentence was three years on the firearm specification.

## Facts and Procedural History

{¶2} On February 7, 2013, Wright was indicted on five counts of felonious assault and attendant firearm specifications and two counts of improper discharge of a firearm at or into a habitation with the attendant firearm specifications; all seven primary offenses are second degree felonies. The charges stemmed from Wright firing an AK-47 at a vehicle with five passengers, an adult and four children. The children were unharmed, and the adult sustained three gunshot wounds but survived. Two adjacent residences sustained damage from the gunfire as well.

{¶3} On May 7, 2013, Wright entered a plea of not guilty, was appointed counsel, and a trial date was set. Within the week that followed, counsel for Wright filed a request for evidence, demand for discovery, a motion for bill of particulars and Wright executed a speedy trial waiver. As a result, the trial date was reset.

{¶4} On September 18, 2013, Wright filed a pro se "motion to withdraw defendant's waiver of his right to a speedy trial." Within the motion he stated that he was never informed of his right to a speedy trial, and did not sign the waiver.

{¶5} There were multiple continuances before August 1, 2014, when Wright filed a motion to dismiss due to pre-indictment delay in excess of one year, which the State opposed arguing a lack of actual prejudice. The trial court denied the motion.

{¶6} After two plea hearings were set and continued, on December 1, 2014, Wright again filed a "revocation of speedy trial waiver" and requested new counsel. After being appointed, new counsel filed several motions to gather information about

the case and requested a continuance to have time to prepare for trial.

{¶7} Trial commenced on April 20, 2015 over two years after Wright was indicted. During voir dire Wright's counsel raised a *Batson* challenge.

{¶8} The jury convicted Wright of all charges as indicted and a presentence investigation was ordered. The trial court sentenced Wright to eight years on one count of felonious assault, to be served consecutively to the remaining four counts for which the trial court imposed four-year sentences to be served concurrently to each other. The trial court also imposed a four-year sentence on both improper discharge counts, to be served concurrently to each other but consecutively to the other sentences imposed. Finally, while the trial court merged Wright's seven gun specifications for sentencing purposes and imposed a three-year term during the sentencing hearing, the sentencing entry omits this order; instead the trial court stated that Wright's total sentence was 19 years.

## Batson challenge

{¶9} In his first of three assignments of error, Wright asserts:

THE TRIAL COURT ERRED WHEN IT FAILED TO MAKE A FINDING ON APPELLANT'S *BATSON* CHALLENGE TO THE EXCUSAL OF AN AFRICAN-AMERICAN JUROR BASED ON RACE IN VIOLATION OF APPELLANT'S FOURTEENTH AMENDMENT RIGHT TO EQUAL PROTECTION OF THE LAW

{¶10} The Equal Protection Clause of the United States Constitution prohibits purposeful discrimination in the exercise of a peremptory challenge to excuse a juror on account of his race. *Batson v. Kentucky,* 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L .Ed.2d 69 (1986). In *Batson,* the United States Supreme Court outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause. *Id.* at 96–98. First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. *Id.* at 96–97. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral

explanation for striking the jurors in question. *Id.* at 97–98. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. *Id.* at 98. An appellate court will not reverse the trial court's decision of no discrimination unless it is clearly erroneous. *See State v. Hernandez,* 63 Ohio St.3d 577, 583, 589 N.E.2d 1310 (1992).

{¶11} Wright satisfied the first step of demonstrating a prima facie case of racial discrimination; counsel objected immediately after the prospective juror—who was African-American—was dismissed. Consequently, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror in question. The State responded as follows:

> PROSECUTOR: First of all, I would state that the victims in this case are also black. The state has excused also a white juror. This particular juror seemed very disinterested during our questioning. It appeared that she even fell asleep at one point, and just her attitude towards the whole process seemed to be very disinterested and antagonistic.

{¶12} The trial court did not make an express finding regarding the challenge, but proceeded with voir dire and replaced the dismissed juror:

> THE COURT: I believe it's the state's peremptory.
>
> PROSECUTOR: Your Honor, at this time the state would thank and excuse Juror No. 12, Ms. Gurley.
>
> THE COURT: Ma'am, you're excused. Please report back to Mr. Jackson for further instruction.

{¶13} The bailiff then called the name of the next person from the potential juror panel. After she was seated, counsel requested a side bar outside the hearing of the jury pool and argued the *Batson* challenge. In response, the trial court denied the challenge by merely stating "Okay."

**{¶14}** At that point the proceedings were recommenced in the presence of the prospective jurors and the trial court continued with voir dire with the newly seated prospective juror.

**{¶15}** Wright argues that this is error in violation of the third prong of *Batson*. The State contends that the reason given by the prosecutor was race-neutral, but does not directly respond to Wright's argument that it was error for the trial court to fail to say more regarding a finding.

**{¶16}** The State gave two racially-neutral reasons for using a peremptory challenge against the prospective juror: being disinterested and appearing to fall asleep. It is not a heavy burden for the State to meet to articulate a racially-neutral reason for using a peremptory strike. However, the third element of *Batson* states that the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination, *Batson*.

**{¶17}** A similar argument arose in *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 98, which the Ohio Supreme Court rejected:

> Frazier contends that the trial court's failure to make findings in connection with its ruling requires reversal. Certainly, more thorough findings by the trial court in denying the defense *Batson* objections would have been helpful. However, the trial court is not compelled to make detailed factual findings to comply with *Batson*. See *Miller–El v. Cockrell* (2003), 537 U.S. 322, 347, 123 S.Ct. 1029, 154 L.Ed.2d 931 ("a state court need not make detailed findings addressing all the evidence before it" to render a proper Batson ruling). "As long as a trial judge affords the parties a reasonable opportunity to make their respective records, he may express his *Batson* ruling on the credibility of a proffered race-neutral explanation in the form of a clear rejection or acceptance of a Batson challenge." *Messiah v. Duncan* (C.A.2, 2006), 435 F.3d 186, 198. Thus, no error was committed in ruling on Frazier's two *Batson* challenges, because the trial court clearly rejected them.

{¶18} Given the record before us, the trial court rejected the challenge after giving the parties the opportunity to make their arguments. While the better practice would be for the trial court to be more expansive in the denial, the prospective juror was sent back to the jury commissioner's office; she was not seated for this case. Thus Wright's *Batson* challenge was rejected by the trial court. More important for our review of the *Batson* challenge, we have the arguments of defense counsel and the prosecutor to review. As the reasoning offered by the State was race-neutral, the trial court did not err in granting the peremptory challenge. Accordingly, Wright's first assignment of error is meritless.

**Merger**

{¶19} In his second of three assignments of error, Wright asserts:

THE TRIAL COURT ERRED WHEN IT IMPOSED CONSECUTIVE SENTENCES FOR IMPROPERLY DISCHARGING A FIREARM INTO OR AT A HABITATION AND FELONIOUS ASSAULT, ALLIED OFFENSES OF SIMILAR IMPORT.

{¶20} Wright asserts that his sentences for the felonious assault and the improper discharge offenses should have merged because it was part of a single continuous course of conduct, and when comparing the elements of both offenses they can be committed with the same conduct.

{¶21} Ohio's merger statute provides as follows: "Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them." R.C. 2941.14. Appellate review of an alleged merger error is de novo. *State v. Williams,* 134 Ohio St.3d 482, 2012–Ohio–5699, 983 N.E.2d 1245, ¶ 28; *State v. Johnson*, 7th Dist. No. 12MA137, 2014-Ohio-4253, ¶ 109.

**{¶22}** Although Wright relies upon *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892 controls. Regarding *Johnson,* the Court stated:

> In *Johnson*, we emphasized that abstract analysis of the elements of a crime was insufficient and that the defendant's conduct must be considered when evaluating whether offenses are allied. *Id.* at ¶ 44. While it is true that the syllabus in *Johnson* says that "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered," this language does not offer the complete analysis necessary to determine whether offenses are subject to merger rather than multiple convictions and cumulative punishment. We agree with the state that our decision in *Johnson* was incomplete because R.C. 2941.25(B) provides that when a defendant's conduct constitutes two or more offenses of dissimilar import, the defendant may be convicted of all of the offenses.

*Ruff* at ¶ 16.

**{¶23}** The *Ruff* Court continued: "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 26.

**{¶24}** Wright fired an AK-47 at a vehicle with five passengers, an adult and four children in a residential area; during the incident two separate residences sustained damage from the gunfire. As such, Wright's convictions for the five felonious assault counts and the two improper discharge counts do not merge because they involve separate victims and separate, identifiable harm. *Ruff.* Accordingly, the trial court correctly did not merge these seven convictions, and Wright's second assignment of error is meritless.

{¶25} However, our review of this assignment of error reveals an error in Wright's sentencing entry, specifically, his sentence for the gun specifications. The trial court imposed 16 years for Wright's felonious assault and improper discharge convictions through a combination of concurrent and consecutive sentences for these seven counts. The trial court then merged Wright's seven gun specifications for sentencing purposes, but did not impose a specific sentence for those offenses. Instead, the trial court stated that Wright's aggregate sentence was 19 years.

{¶26} While the trial court imposed three years on the gun specification during the sentencing hearing, and we can glean from the sentencing entry that the trial court imposed that three-year term by subtracting the sentences imposed for the other convictions from his aggregate sentence, this does not comport with Ohio sentencing jurisprudence. Accordingly, we are remanding Wright's case to the trial court with instructions to issue a nunc pro tunc sentencing judgment entry specifically referencing and incorporating the firearm specification as part of the 19-year prison term.

### Speedy Trial

{¶27} In his third of three assignments of error, Wright asserts:

THE TRIAL COURT ERRED WHEN IT FAILED TO RULE ON APPELLANT'S MOTION TO WITHDRAW HIS SPEEDY TRIAL WAIVER AND WHEN IT DENIED HIS MOTION TO DISMISS BASED ON PRE-INDICTIMENT DELAY IN VIOLATION OF HIS SIXTH AMENDMENT AND STATUTORY RIGHTS TO A SPEEDY TRIAL AND HIS FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS OF LAW.

{¶28} The Sixth Amendment to the United States Constitution provides that an "accused shall enjoy the right to a speedy and public trial." Section 10, Article I of the Ohio Constitution also provides a criminal defendant the right to a speedy public trial by an impartial jury.

{¶29} R.C. 2945.73(B) further addresses a criminal defendant's statutory right

to a speedy trial: "Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code." A defendant charged with a felony must be brought to trial within 270 days of his or her arrest. R.C. 2945.71(C)(2). However, "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E). This is also referred to as the triple count provision.

> A review of a trial court's decision regarding a motion to dismiss based on statutory speedy trial grounds involves a mixed question of law and fact. Deference is given to the trial court's findings of fact, but the appellate court independently reviews whether the trial court properly applied the law to the facts of the case. When reviewing the legal issues regarding a statutory speedy trial case, the statutes are strictly construed against the state.

*State v. Fant,* 2016-Ohio-7429, --N.E.3d --, ¶35 (7th Dist.) (internal citations omitted).

{¶30} There are two arguments being made in this single assignment of error. Wright contends that his case should have been dismissed due to pre-indictment delay and also that his try by time had expired. Both will be discussed in turn.

### Pre-Indictment Delay

{¶31} The Ohio Supreme Court recently considered preindictment delay:

> [O]n its face, the Sixth Amendment provides no protection to those who have not yet been accused; it does not "require the Government to discover, investigate, and accuse any person within any particular period of time." *United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Statutes of limitations provide the ultimate time limit within which the government must prosecute a defendant—a definite point "beyond which there is an irrebuttable presumption that a

defendant's right to a fair trial would be prejudiced." Id. at 322, 92 S.Ct. 455. See also *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) (stating that statutes of limitations provide predictable limits to prevent initiation of overly stale charges). But when unjustifiable preindictment delay causes actual prejudice to a defendant's right to a fair trial, despite the state's initiation of prosecution within the statutorily defined limitations period, the Due Process Clause affords the defendant additional protection. *Id.*

This court has stated succinctly that preindictment delay violates due process only when it is unjustifiable and causes actual prejudice: "An unjustifiable delay between the commission of an offense and a defendant's indictment therefor, which results in actual prejudice to the defendant, is a violation of the right to due process of law" under the United States and Ohio Constitutions. *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), paragraph two of the syllabus.

And we have firmly established a burden-shifting framework for analyzing a due-process claim based on preindictment delay. Once a defendant presents evidence of actual prejudice, the burden shifts to the state to produce evidence of a justifiable reason for the delay. *State v. Whiting*, 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998); *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 99.

*State v. Jones,* 2016-Ohio-5105, -- N.E.3d --, ¶ 11-13.

**{¶32}** Wright's two-page motion to dismiss states that he was substantially prejudiced but provides no details or examples of how he was actually prejudiced. Further, if a hearing was held on this motion, Wright has failed to provide a copy of the transcript for this Court to conduct an independent review. As Wright did not prove actual prejudice, the burden never shifted to the State to prove justifiable reason for the delay.

**Try-By Time**

**{¶33}** Wright also asserts that he was not brought to trial within the statutorily mandated time. Wright was indicted February 7, 2013, arrested and arraigned on May 3rd, 2013, and on May 10th executed a speedy trial waiver. Wright attempted to rescind his waiver of speedy trial arguing that he had not signed the waiver.

**{¶34}** The trial court's judgment entries memorialized Wright's waiver. As the waiver was valid, it was in full force and effect during the pendency of these proceedings. "Following an express, written waiver of unlimited duration by an accused of his right to a speedy trial, the accused is not entitled to a discharge for delay in bringing him to trial unless the accused files a formal written objection and demand for trial, following which the state must bring the accused to trial within a reasonable time." *State v. O'Brien*, 34 Ohio St. 3d 7, 516 N.E.2d 218 (1987), syllabus.

**{¶35}** Accordingly, as there was no preindictment delay and Wright waived his speedy trial time, his third assignment of error is meritless.

**{¶36}** In sum, Wright's assignments of error are meritless. However, while the trial court did sentence Wright to three years on the specification at the sentencing hearing the entry omits this order. Accordingly, this matter is remanded to the trial court with instructions to issue a nunc pro tunc sentencing judgment entry specifically referencing and incorporating the firearm specification as part of the 19-year prison term.

Donofrio, J., concurs.

Robb, P. J., concurs.