[Cite as *State v. Conyer*, 2017-Ohio-7506.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO. 16 MA 0021 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| MAURICE CONYER, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from the Court of Common Pleas of Mahoning County, Ohio
Case No. 14 CR 1120

JUDGMENT: Affirmed.

APPEARANCES:

For Plaintiff-Appellee:
Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Assistant Prosecuting Attorney
21 West Boardman St., 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant:
Atty. Rhys B. Cartwright-Jones
42 N. Phelps St.
Youngstown, Ohio 44503-1130

JUDGES:

Hon. Carol Ann Robb
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: August 28, 2017

ROBB, P.J.

{¶1} Defendant-Appellant Maurice Conyer appeals from his finding of guilt and sentence entered in Mahoning County Common Pleas Court for two counts of felonious assault and firearm specifications. Three issues are raised in this appeal. The first issue is whether the trial court erred in allowing the admission of the 911 call from an unidentified witness. The second issue is whether the trial court erred in denying defense counsel's motion to continue based on the need to investigate the anonymous 911 call. The third issue is whether the trial court erred when it did not merge the two felonious assault convictions. For the reasons expressed below, none of these arguments have merit. The convictions are affirmed.

Statement of the Facts and Case

{¶2} On July 21, 2014 Sharron Winphrie and her cousin Shayla Blair were visiting another cousin at 118 Hilton Avenue. Tr. 172, 192. Appellant was also there. Tr. 174-175, 193. Winphrie was driving her boyfriend's car and backed into the driveway behind Appellant's car. Tr. 175, 181, 192, 193. A verbal altercation ensued between Winphrie and Appellant. Tr. 175-176, 185-186, 194-195. Winphrie and Blair got into Winphrie's car and moved it so Appellant could leave the gathering. Tr. 186, 195. As Appellant was driving his red Chevy Impala past Winphrie's car, he allegedly shot four or five rounds at the vehicle. Tr. 176, 181, 186, 195-196, 197.

{¶3} Winphrie and Blair then drove to Winphrie's house. Tr. 177, 201. She called her boyfriend and then the police. Tr. 177, 201. In their interview with the police, Winphrie and Blair stated Appellant shot at Winphrie's car and Appellant was driving a car with the license plate number REECE01. Tr. 143, 184, 193, 201. The police investigated the license plate number and discovered Appellant owned a red Chevy Impala with that license plate number. Tr. 143.

{¶4} A 911 call from an anonymous witness also confirmed the shooting. State's Exhibit 1. The caller stated shots were "just fired" at 118 Hilton Avenue. State's Exhibit 1. The caller indicated the shots came from a red Impala with the license plate number REECE01. State's Exhibit 1. When asked if he wanted police

to come to the scene, he stated no and indicated he was only calling to report the incident. State's Exhibit 1.

{¶5}   As a result of the shooting and investigation, Appellant was indicted on two counts of felonious assault in violation of R.C. 2903.11(A)(2)(D) with attendant firearm specifications, R.C. 2941.145(A). The indictment listed Shayla Blair and Sharron Winphrie as victims of the felonious assaults. 10/30/14 Indictment.

{¶6}   During the discovery process both the state and defense requested a copy of the anonymous 911 call. Tr. 106. It was not given to the state until the day before trial. Tr. 106. The state notified defense counsel and the defense received a copy of the 911 call that same day. Tr. 106.

{¶7}   On the day of trial, defense counsel moved to exclude the recording of the 911 call. In the alternative, it asked for the court to grant a continuance so the defense could investigate the call.

{¶8}   The trial court denied the request to exclude the tape, but indicated it would grant a continuance. However, Appellant opposed the continuance and indicated he wanted to proceed with the trial. He made this choice after being advised the recording would be admitted into evidence and played for the jury. The trial court then denied the motion for continuance.

{¶9}   After hearing the evidence, the jury found Appellant guilty of the indicted charges. The case proceeded immediately to sentencing. The trial court sentenced Appellant to an aggregate 13-year sentence. He received 5 years for each felonious assault conviction to run consecutive to each other. The trial court merged the firearm specifications convictions and sentenced Appellant to one 3-year mandatory sentence. Pursuant to law, the 3-year firearm sentence was required to be served prior to and consecutive to the other sentences. 2/4/16 J.E.

{¶10}  Appellant timely appeals the jury's guilty verdict and the sentences.

First Assignment of Error

"The trial court erred in allowing in 911 audio without a foundation establishing an unavailable witness and a prior opportunity to cross-examination."

{¶11} Appellant asserts the trial court erred when it allowed the 911 audio from an anonymous caller to be played for the jury. He contends the statements made by the caller were testimonial hearsay and were inadmissible under the Confrontation Clause. In his opinion, the statements could not constitute an ongoing emergency because the caller was speaking in the past tense, in a calm voice, and the caller indicated he did not need the police to come to the scene.

{¶12} The state disagrees and contends the 911 call was non-testimonial because it was made in response to an ongoing emergency.

{¶13} The Sixth Amendment's Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The clause prohibits the admission of testimonial statements of a non-testifying witness unless he was unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 53–54, 124 S.Ct. 1354 (2004) (victim's recorded statement to police was testimonial). The testimonial character of a statement separates it from other hearsay which is not subject to the Confrontation Clause. *Davis v. Washington*, 547 U.S. 813, 821–822, 126 S.Ct. 2266 (2006) (The 911 call during a domestic dispute was not testimonial due to an on-going emergency. However, victim's statement after being separated from husband and questioned by police was testimonial due to the primary purpose of proving past events relevant to later criminal prosecution.).

{¶14} *Davis* held that statements "are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id*. at 814. The Court specifically stated: "A 911 call, on the other hand, and at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance." *Id*. at 827. Statements made in response to questioning by a 911 operator are nontestimonial where the "primary purpose" of the statements is to obtain assistance in an emergency. *State v. McGee*, 1st Dist. No. C-150496, 2016-Ohio-7510, ¶ 16, citing

*State v. Siler*, 116 Ohio St.3d 39, 2007–Ohio–5637, 876 N.E.2d 534, ¶ 24–25, and *Davis* at 822.

**{¶15}** Following *Davis*, the United States Supreme Court further explained what constitutes an ongoing emergency. *Michigan v. Bryant*, 562 U.S. 344, 359, 131 S.Ct. 1143 (2011). The *Bryant* Court stated the 'ongoing emergency' "extends beyond an initial victim to a potential threat to the responding police and the public at large." *Id.* "[W]hether an emergency exists and is ongoing is a highly context-dependent inquiry." *Id.* at 363. Many factors come into play in objectively evaluating the circumstances:

> An objective analysis of the circumstances of an encounter and the statements and actions of the parties to it provides the most accurate assessment of the "primary purpose of the interrogation." The circumstances in which an encounter occurs—e.g., at or near the scene of the crime versus at a police station, during an ongoing emergency or afterwards—are clearly matters of objective fact. The statements and actions of the parties must also be objectively evaluated. That is, the relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred.

*Id.* at 360.

**{¶16}** That said, the *Bryant* Court stressed the existence of an ongoing emergency is one of the most important factors in assessing an interrogation's primary purpose, because it focuses participants on something other than proof of past events for purposes of criminal prosecutions, and the prospect of fabrication is "presumably significantly diminished." *Id.* at 361. Whether there is an ongoing emergency may depend in part on the weapon used. *Id.* at 364. Furthermore, "[a]n assessment of whether an emergency that threatens the police and public is ongoing

cannot narrowly focus on whether the threat solely to the first victim has been neutralized because the threat to the first responders and public may continue." *Id.* at 363. "Domestic violence cases * * * often have a narrower zone of potential victims than cases involving threats to public safety." *Id.* at 344. An ongoing emergency can exist after the original threat to the victim has ceased to exist if there is a potential threat to police or the public, or the victim is in need of emergency medical services. *Cleveland v. Merritt*, 2016-Ohio-4693, 69 N.E.3d 102, ¶ 10 (8th Dist.), citing *Bryant* at 376.

{¶17} The anonymous 911 call before us occurred at 8:38 pm. The caller sounded calm and indicated "we had some shots just fired here on Hilton Avenue, around 118." State's Exhibit 1. The caller described the incident as a drive by shooting; there were 3 or 4 shots fired from a moving car. State's Exhibit 1. The caller stated the car was a red Impala with the license plate number REECE01 and the driver was a black male. State's Exhibit 1. After a discussion with other witnesses, the caller stated there were two people in the red Impala. State's Exhibit 1. The caller then informed the 911 operator of the direction the vehicle was traveling; the car traveled east on Hilton Avenue heading toward Erie Street. State's Exhibit 1. When asked if he wanted the 911 dispatcher to send the police, the caller said he did not want to see the police, he just wanted "somebody here to look." State's Exhibit 1.

{¶18} Appellant focuses on the calm nature of the caller and the use of the past tense to indicate this was not an ongoing emergency. This court disagrees with that conclusion. Although the caller does use the past tense, he stated shots were "just fired." The use of the word "just" means it happened in close proximity in time to when the call was made. Likewise, State's Exhibit 1 contains the 911 call from the victim, Winphrie. Her call occurred at 9:00 pm. She testified after the shooting she drove home, called her boyfriend, and then called 911. Her explanation of when her call occurred could indicate the anonymous caller called shortly after the shooting.

{¶19} Furthermore, nothing in the caller's description indicates this was a domestic situation. Rather, this was a drive-by shooting. This posed an ongoing

threat to the public. Although the caller did not want to see the police, he did want "somebody here to look." It is logical to think the caller wanted the police to investigate the situation and find the shooter to ensure no other drive-by shootings occurred.

**{¶20}** Therefore, considering all the circumstances objectively, the anonymous 911 call is non-testimonial and no violation of the Confrontation Clause occurred.

**{¶21}** However, even if it is considered testimonial, the error was harmless. Both Winphrie and Blair testified to the same information that was relayed in the anonymous 911 call. Winphrie stated Appellant drove a red Impala with license plate number REECE01 and when he drove by her car he shot 4 or 5 rounds at the car. Tr. 193, 195-196, 197. She stated he was on Hilton Avenue, driving toward Erie Street. Tr. 200. Blair testified Appellant drove a red Impala and shot at the car she and Winphrie occupied. Tr. 176, 177, 181. Consequently, the anonymous call did not provide any new information for the jury. Thus, any error in admitting the call was harmless.

**{¶22}** For the above stated reasons, this assignment of error is meritless.

<u>Second Assignment of Error</u>

"The trial court erred in denying defense counsel's motion to continue, the basis of which was a need to prepare to confront the aforementioned 911 audio, on the grounds that the defendant objected to the motion."

**{¶23}** "The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge." *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981), syllabus. In reviewing a trial court's grant or denial of a continuance, a reviewing court will not reverse the trial court's decision absent an abuse of discretion. *Id.* at 67. An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N .E.2d 444 (1980).

**{¶24}** An appellate court's review of a denial of a motion for a continuance requires the application of a balancing test where we must weigh the trial court's

interest in controlling its docket and the public's interest in the prompt, efficient dispatch of justice versus any prejudice to the moving party. *Unger* at 67. The Ohio Supreme Court has articulated factors a trial court should consider in ruling on a motion for continuance:

> [T]he length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstances which gives rise to the request for continuance; and other relevant factors, depending on the unique facts of each case.

*Id.* at 67–68.

{¶25} In the case at hand, Defense counsel moved for a continuance to review and investigation the anonymous 911 call. During the colloquy of whether to grant the request for continuance, defense counsel explained he was just given the recording of the 911 call the previous day and needed time to investigate the call. He stated if the 911 call was introduced it would affect trial strategy and would be damaging. The trial court indicated the 911 call would be admissible at trial, but was willing to grant the motion for continuance. Appellant was present for the entire discussion. However, not heeding his counsel's advice, Appellant indicated he wanted to go forward with the trial and he did not want a continuance. Therefore, the trial court stated it would deny the request based on Appellant's opposition to the continuance.

{¶26} Appellant argues the trial court abused its discretion in denying the motion for continuance. He admits he opposed the continuance. However, he contends his input should not have been considered because the decision was not his to make. He asserts a continuance is a part of trial strategy and is a decision an attorney can decide over a client's objection.

**{¶27}** Appellant contends the Ohio Supreme Court's decision in *McBreen* supports his argument and conclusion. In *McBreen*, the Court was asked to decide whether counsel's execution of a speedy trial waiver for the purpose of trial preparation bound appellant. *State v. McBreen*, 54 Ohio St.2d 315, 376 N.E.2d 593 (1978). McBreen was not aware or informed of the waiver. *Id.* at 316. The Court found counsel had the authority to execute the waivers for purposes of trial preparation, and McBreen was bound by the waivers. *Id.* at 319. In making that ruling, the Court cautioned, "(c)ounsel's control * * * is not unlimited, and there are certain fundamental protections guaranteed an accused which counsel may not waive without his client's concurrence." *Id.* at 320.[1]

**{¶28}** *McBreen* could support a trial court's decision to grant counsel's motion for a continuance when counsel does not confer or inform the client of the request for a continuance. However, it does not necessarily support the conclusion that the trial court abuses its discretion when it denies counsel's request for a continuance because the client does not want the continuance.

**{¶29}** As stated above, the trial court is permitted to consider any other relevant factors, depending on the unique facts of each case, when determining to grant or deny a request for a continuance. *Unger* at 67-68. This could include a defendant's opinion of whether a continuance is needed. The trial court is in the best position to determine whether a defendant understands counsel is requesting a continuance for the purposes of trial preparation. The trial court is also in the best position to determine if a defendant understands the implications of disagreeing with counsel's advice that a continuance is needed to prepare for trial.

**{¶30}** In this case, the record indicates the trial court considered both of those factors. There is a lengthy discussion on the record about counsel wanting a

---

[1]The *McBreen* holding has been recently cited by the Second Appellate District. *State v. Reeves*, 2d Dist. No. 2015-CA-12, 2016-Ohio-5540, ¶ 17 (stating "'for purposes of trial preparation, a defendant's statutory right to a speedy trial may be waived, with or without the defendant's consent, by the defendant's counsel.' *State v. King*, 70 Ohio St.3d 158, 160, 637 N.E.2d 903 (1994). However, '[t]o be effective, an accused's waiver of his or her constitutional and statutory rights to a speedy trial must be expressed in writing or made in open court on the record.' *Id.* at 158.").

continuance for trial preparation and why counsel believed it was needed. Tr. 106-116. The trial court clearly indicated the 911 recording would be admitted at trial over the defense's objection. Tr. 114. On the basis of that ruling, defense counsel stated a continuance was needed to investigate the 911 recording, find out who made the call, and determine whether the defense should call that person as a witness. Tr. 109-110, 117. The trial court stated it would have granted the continuance if Appellant had not opposed it and acknowledged Appellant was aware of the implications of his decision:

> **THE COURT**: I think that accurately reflects the record that through no fault of the state the 911 tape was just received. Immediately upon state's receipt of that evidence you were notified and provided a copy. You did request a continuance. Actually you moved to exclude it. The least restrictive sanction, if there were to be any sanction, would not be an exclusion of the 911 tape but a reasonable continuance in order for you to investigate it. * * * So you're correct; the motion to exclude that 911 tape is overruled. Your request for a continuance of the trial would have been granted but for Mr. Conyer, Mr. Conyer telling me that he did not want a continuance, understanding the impact of that to the case and the impact, of course, negatively—
>
> **MR. ZENA** [Defense Counsel]: He listened to it, Your Honor. He listened to the tape.
>
> **THE COURT**: And it cuts into your ability to defend him, but knowing that he would like to go forward. * * *

Tr. 118-119.

{¶31} The record also indicates Appellant has a criminal record and immediately prior to this trial he was convicted and sentenced in the federal system. This indicates Appellant had some knowledge about the justice system.

**{¶32}** Considering all the above, this court concludes the trial court did not abuse its discretion in denying the continuance. There might be a situation where a defendant does not show an understanding of the implications of counsel's advice where the denial of a continuance could amount to an abuse of discretion. However, this is not that case.

**{¶33}** Additionally, it is noted, any abuse in denying the continuance is invited error. It is difficult to disregard the fact that the court indicated a continuance would be granted; Appellant did not want the continuance; voiced his opposition to the continuance to the trial court; and the trial court abided by his wishes. "Under the settled principle of invited error, a litigant may not 'take advantage of an error which he himself invited or induced.'" *State v. Murphy*, 91 Ohio St.3d 516, 535-536, 747 N.E.2d 765. Thus, Appellant is foreclosed from asserting the trial court abused its discretion when it did exactly what he wanted the court to do and had knowledge of the implications of his decision.

**{¶34}** In conclusion, this assignment of error is meritless.

<u>Third Assignment of Error</u>

"The trial court erred in imposing consecutive sentences as to a single-transaction felonious assault."

**{¶35}** Appellant argues the felonious assault offenses are allied offense of similar import, and as such the trial court erred in failing to merge the offenses for purposes of sentencing. He asserts it was a single transaction and there was not a separate animus for each offense.

**{¶36}** The state disagrees. It contends there was a separate animus for each victim and as such, the offenses do not merge.

**{¶37}** Whether offenses constitute allied offenses of similar import subject to merger under R.C. 2941.25 is a question of law that appellate courts review de novo. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 26-28. The burden is on the defendant to establish his entitlement to merger. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18.

**{¶38}** Appellant did not ask the court to merge the offenses.  Thus, the plain error standard of review applies.  *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 199.  Plain error does not exist unless, but for some "obvious" error committed by the trial court, the outcome of the trial would have been different.  *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 31.  "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."  *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶39}** Pursuant to R.C. 2941.25, a trial court shall not impose multiple punishments for the same criminal conduct:

> (A)   Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B)  Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25.

**{¶40}** "In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors – the conduct, the animus, and the import."  *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, paragraph one of the syllabus.  If any of the following are true, a defendant's convictions do not merge and he or she may be sentenced for multiple offenses: "(1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation."  *Id.* at ¶ 25.

**{¶41}** The *Ruff* court explained:

The defendant's conduct is but one factor to consider when determining whether multiple offenses are allied offenses of similar import pursuant to R.C. 2941.25(B). One justice in *Johnson* succinctly explained the idea of dissimilar import: "In practice, allied offenses of similar import are simply multiple offenses that arise out of the same criminal conduct and are similar but not identical in the significance of the criminal wrongs committed and the resulting harm." *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 64 (O'Connor, J., concurring in judgment). In other words, offenses are not allied offenses of similar import if they are not alike in their significance and their resulting harm.

*Id.* at ¶ 21.

**{¶42}** "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id.* at ¶ 26. Therefore, the analysis "may result in varying results for the same set of offenses in different cases." *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, ¶ 52, abrogated in part by *Ruff* at ¶ 30-33. Evidence presented at trial, during a plea hearing, or sentencing hearing will reveal whether the offenses have similar import. *Ruff* at ¶ 26.

**{¶43}** Appellant was charged with felonious assault against two separate victims. The jury found Appellant guilty of both charges. Appellant states Ohio reviewing courts have held felonious assaults that are part of a single occurrence and do not cause injuries merge for purposes of sentencing.

**{¶44}** That argument fails. The Ohio Supreme Court has clearly stated that when there are multiple victims, a defendant can be convicted of multiple counts. *Id.* ("When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts."). Likewise, this court on numerous occasions has determined if there is more than one victim then the offenses do not merge. *State v. Wright*, 7th

Dist. No. 15 MA 92, 2017-Ohio-1211, ¶ 24; *State v. Howard-Ross*, 7th Dist. No. 13MA 168, 2016-Ohio-1438, ¶15-17; *State v. Toney,* 7th Dist. No. 14 MA 0083, 2016-Ohio-3296, ¶ 77-78; *State v. White*, 7th Dist. No. 14 MA 184, 2015-Ohio-5455, ¶ 20. Therefore, when there are multiple victims merger is not required.

**{¶45}** Furthermore, the evidence indicates there was a separate and distinct harm for each person. Blair and Winphrie had to move the car in order for Appellant to leave the gathering. Appellant drove past the vehicle as he was leaving 118 Hilton Avenue and fired 4 or 5 shots at the vehicle. The car had damage from bullets in the hood of the car, the rear passenger side of the car, and in the passenger door. State's Exhibits 2, 3, 4, and 5. Additionally, both the front windshield and passenger window were damaged from the bullets. State's Exhibits 2, 3, 4, and 5. The evidence indicates Appellant knew there were two people in the car when he fired the shots. Thus, the harm for each victim was separate and distinct, and there was a separate animus for each victim.

**{¶46}** Accordingly, the offenses, as committed, are not allied offenses of similar import. There was no error, plain or otherwise, committed when the trial court failed to merge the offenses. This assignment of error lacks merit.

## Conclusion

**{¶47}** All assignments of error are meritless. The convictions are affirmed.

Waite, J., concurs.

DeGenaro, J., concurs.